Filed 6/20/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re H.B., A Person Coming Under the Juvenile Court Law. | B322472 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP07101A) |
| Plaintiff and Respondent, | |
| v. | |
| S.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Gabriela H. Shapiro, Juvenile Court Referee. Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

S.B. (father) appeals from the juvenile court's order terminating his parental rights over his daughter H.B. pursuant to Welfare and Institutions Code[1] section 366.26.  Father contends only that the juvenile court erred in finding the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) inapplicable based on the record of inquiry made by the Los Angeles County Department of Children and Family Services (Department) with H.B.'s extended family members.  Finding no error, we affirm.

## BACKGROUND

H.B. was born November 2016 to father and R.V. (mother).  Just days after her birth, the Department received a report that mother had used methamphetamine during her pregnancy with H.B. and that father was also a methamphetamine user.  The Department's investigation into general neglect of H.B. was closed as inconclusive.

This case began about three years later.  At the time, father was on probation for methamphetamine charges.  Law enforcement conducting a probation check on him at the family home turned up "large amounts of methamphetamines . . . in plain sight and completely accessible to [H.B.]."  Law enforcement contacted the Department.  A Department social worker joined law enforcement at the home.  The social worker noted the home was dirty and in disarray, with trash piled around and large rat traps, in addition to methamphetamine, in areas accessible to H.B.  The social worker removed H.B.  Mother

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

and father were both arrested and detained. The Department filed a dependency petition and these proceedings ensued.

As the issue on appeal is limited to the adequacy of the Department's inquiry supporting the juvenile court's ICWA findings, we limit our recitation of the facts accordingly.

The Department filed its petition on November 1, 2019. Attached to the petition was a form ICWA-010(A) reflecting that the Department had questioned mother about Indian[2] ancestry, and she denied having any.

At the November 2019 detention hearing, paternal grandmother, paternal aunt, and maternal great-grandmother were present in court. The parents were not present. The juvenile court found ICWA did not apply based on the information before it but ordered the parents to keep the Department, their counsel, and the court aware of any new information relating to possible ICWA status. Paternal grandmother, paternal aunt, and maternal great-grandmother made no statements in response to the court's ICWA finding.

Later in November 2019, on the day of the arraignment hearing, father and mother filed their respective form ICWA-020's, stating they had no Indian ancestry as far as they knew. At the hearing, in addition to the parents, paternal grandmother, paternal grandfather, paternal stepgrandmother, and paternal aunt were present in court. The juvenile court noted the parents' ICWA-020 forms were filed and found no reason to know H.B. was an Indian child. The juvenile court

---

[2] In this opinion, we use the term "Indian" as defined in section 1903 of title 25 of the United States Code.

ordered H.B. detained and set the case for an adjudication hearing.

In its January 2020 jurisdictional and dispositional report, the Department reported mother was raised by maternal grandmother and maternal grandfather until she was 10 years old, when maternal grandmother left the family home. After her parents' separation, mother stayed in the home with maternal grandfather and maternal great-grandmother for a time. But when she was 14, mother moved in with maternal great-grandfather to be closer to maternal grandmother (who had been incarcerated) when she was released from jail. Mother has since lost contact with maternal grandfather.

Father's parents are similarly separated. He was raised by paternal grandmother and paternal stepgrandfather until he was in ninth or 10th grade. Then he moved in with paternal grandfather. He has a half brother and half sister on paternal grandmother's side, two half sisters on paternal grandfather's side, a full sister, and a stepbrother through paternal stepgrandmother. Father is in contact with his parents and all of his siblings.

At the January 2020, adjudication hearing, paternal grandmother, paternal stepgrandfather, and maternal aunt were present in court. The juvenile court sustained amended counts in the section 300 petition and set the case for a dispositional hearing.

At the dispositional hearing the following month, the presence of a "maternal step-sister" was noted on the record. The juvenile court ordered the Department to place H.B. with paternal grandfather if there were no safety concerns and, alternatively, with paternal grandmother. The juvenile court

4

declared H.B. a dependent of the court and ordered family reunification services for the parents.

H.B. was initially placed in the home of paternal grandmother and paternal stepgrandfather. Shortly thereafter she was moved to the home of paternal grandfather and paternal stepgrandmother.

In January 2021, the Department reported visiting maternal great-uncle's home, where mother was living, to assess its suitability for visits between mother and H.B. The Department made an unannounced visit to the same home in March 2021 and met maternal great-aunt, maternal great-uncle, and a maternal cousin.

In January 2022, the juvenile court terminated family reunification services for the parents and set the case for a section 366.26 hearing.

In its May 2022 section 366.26 report, the Department recommended termination of parental rights, and that H.B. be adopted by paternal grandfather and paternal stepgrandmother. On the date initially set for the section 366.26 hearing, the juvenile court ordered the Department to interview all known living relatives regarding possible Indian heritage. It continued the hearing for approximately two months to permit the Department to comply with its order.

At an intervening hearing in July 2022, the juvenile court asked father if he was aware of any Native American heritage or any type of relationship with anyone in his familial lineage that might have lived on a reservation, have received benefits from a tribe, or be enrolled in a tribe. Father replied in the negative. The court reminded the Department of its continuing duty to

inquire with extended family members and report its findings in advance of the scheduled section 366.26 hearing.

The Department provided a summary of its efforts to determine whether H.B. has Indian ancestry in a last minute information filed with the juvenile court on July 28, 2022. According to that report, a social worker spoke with paternal grandfather, who stated, " 'No, I do not have any Native American Heritage.' " The social worker asked him if there was anyone else that might have information, and he said "no," but promised to inform the social worker if he had additional information. He also provided contact information for paternal grandmother.

The social worker asked father if he had any Indian heritage, and he again said "no." The social worker asked father if there was anyone else the social worker could speak to about Indian heritage, and he suggested only his parents, but, from his understanding, he did not have any such heritage.

By text message, paternal grandmother informed the social worker that she was not aware of any Indian heritage.

Maternal grandmother also confirmed by text message she was not aware of any Indian heritage but promised to follow up with the social worker if she learned of any.

The social worker asked mother if she had any Indian heritage and mother reconfirmed that she did not. Mother could not think of anyone else for the social worker to ask about Indian heritage. The social worker asked mother to provide contact information for maternal grandfather and maternal great-uncle. Mother responded that she did not have contact information for maternal grandfather but would follow up with the information for maternal great-uncle. She apparently provided the

information for maternal great-uncle, who told the social worker he did not think his family had any Indian heritage.[3]  He explained his father was adopted so he did not know if his father's biological parents were Indian.  He denied knowing anyone that would know about possible Indian heritage.  He promised to let the social worker know if he learned anything further.

On July 29, 2022, the juvenile court found that H.B. was not an Indian child and terminated parental rights.

On August 1, 2022, father's counsel filed a notice of appeal on father's behalf.

## DISCUSSION

In involuntary state court proceedings concerning child custody, such as these dependency proceedings, ICWA requires notice to the relevant Indian tribe "where the court knows or has reason to know that an Indian child is involved."  (25 U.S.C. § 1912(a).)  It is incumbent upon the court administering such a proceeding to inquire whether the subject child is an Indian child. The scope of the duty on the court, as well as certain participants in the proceeding, is defined by federal regulations and related state law.  (See, e.g., 25 C.F.R. § 23.107 (2023); Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481.)

The duty of inquiry has three "phases."  Father claims error with respect to the first.  This phase—the "initial inquiry"—

---

[3]  Maternal great-uncle is referred to as "paternal uncle" in the Department's last minute information.  This is obviously an error.  Maternal great-uncle is identified by name and shares a common surname with mother (which is not the same as father's).  Elsewhere in the record, the same named individual is identified as mother's uncle.

applies in every case. In broad terms, the initial inquiry requires the court and the Department to ask certain persons related to the proceedings about the child's possible Indian ancestry. (See § 224.2, subds. (a), (b), (c); *In re S.S.* (2022) 75 Cal.App.5th 575, 581; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) As relevant to father's appeal, section 224.2, subdivision (b) requires a county welfare department, like the Department, to ask, among others, the child's "extended family members" about "whether the child is, or may be, an Indian child." (*Ibid*.) "Extended family members" include adults who are the child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

A juvenile court's finding that ICWA does not apply in a proceeding implies that (a) neither the Department nor the court had a reason to know or believe the subject child is an Indian child; and (b) the Department fulfilled its duty of inquiry. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) " ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*Ibid*.)

Father claims error based on the Department's failure to inquire with maternal grandfather, paternal stepgrandmother, and an unidentified paternal aunt and maternal stepsister. Father acknowledges that paternal stepgrandmother and maternal stepsister are not among the statutorily defined extended family members. Nonetheless, he asserts that because

8

the initial inquiry duty in section 224.2, subdivision (b), is "not limited to" inquiring of extended family members, we should treat the steprelatives as extended family members that should have been interviewed about Indian ancestry. We reject this argument.

The Legislature expressly adopted the definition of "extended family member" contained in section 1903(2) of title 25 of the United States Code (§ 224.1, subd. (c)) and used that definition in defining the scope of the initial inquiry (§ 224.2, subd. (b)). Nothing in section 224.2, subdivision (b) suggests that a more expansive definition of "extended family members" was intended. That the inquiry may extend to classes of persons in addition to "extended family members" and those other classes referenced in the statute[4] does not expand who is an "extended family member."

Aside from legally irrelevant family ties, father offers no reason that the Department should have inquired with paternal stepgrandmother and maternal stepsister about Indian ancestry. Put another way, he interprets the words "not limited to" in section 224.2, subdivision (b) as making the duty of initial inquiry limitless. This interpretation is absurd. Absent some affirmative obligation to interview them under the statute, the Department's failure to inquire with paternal stepgrandmother and maternal stepsister cannot form the basis for error.

Thus, the question comes down to whether substantial

---

[4] The other classes are: "the child, parents, legal guardian, Indian custodian, . . . others who have an interest in the child, and the party reporting child abuse or neglect . . . ." (§ 224.2, subd. (b).)

evidence supports the juvenile court's findings that the Department's initial inquiry was adequate despite the Department failing to inquire with maternal grandfather and an unidentified paternal aunt.  We conclude that substantial evidence supports the court's findings.

Father's arguments notwithstanding, the extended family member inquiry mandated by section 224.2, subdivision (b) is limited.  (*In re S.S.* (2023) 90 Cal.App.5th 694, 704-705.)  It is not intended to obligate county welfare departments to search for possible Indian ancestry without regard to cost or other practical considerations.  Rather, it is intended to ensure social workers "ask an added question of extended family members whom [they] often already are investigating in their usual course of work." (*Ibid.*)  Despite its broad terms, section 224.2, subdivision (b) does not require inquiry with every adult living extended family member.  "[C]omplying with the literal language of the statute— that is, making an *initial* and *further* ICWA inquiry of every member of a child's extended family . . . —is absurd at best and impossible at worst." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1006.)  Our review is therefore not a mechanistic analysis of whether the record supports a finding of literal compliance with the statute, but "whether the ICWA inquiry conducted has reliably answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding 'is or may be an Indian child.' " (*Id.* at p. 1009.)

In answering this question, we must also consider the limitations on the Department's ability to carry out its inquiry under the particular facts of the case.  "Where . . . a parent largely fails . . . to provide names and contact information for extended family members, [the Department's] ability to conduct

10

an exhaustive ICWA inquiry necessarily is constrained." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.) "[W]e cannot ask the [Department] to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Ibid*.) Requiring the Department to track down information about extended family members beyond that offered by participants in the proceedings would impose an undue burden on the Department and necessarily reduce the resources it has to otherwise protect the welfare of dependent children. (*Ibid*.)

Whether remand for an expanded inquiry is appropriate must also be assessed in light of how much information the Department has already obtained. The more family members the Department has already inquired of, the less the benefit that is likely to obtain from an additional inquiry. At the same time as the incremental value of another interview decreases, the burden of locating and contacting the next family member typically increases. The juvenile court has discretion to determine when enough is enough. (*In re Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1008.)

In this case, the Department did not disregard its duty to inquire with extended family members about possible Indian ancestry. The juvenile court specifically ordered the Department to carry out such an inquiry. The Department expanded its initially deficient inquiry and reported the scope and results of its expanded inquiry to the court. The court impliedly found the Department's expanded inquiry was satisfactory in concluding the ICWA was inapplicable.

We find no basis for disturbing the juvenile court's conclusion. After the juvenile court ordered it to expand its

11

inquiry, the Department asked both parents to direct them to other people who might have knowledge about possible Indian ancestry. Father identified only his parents as an avenue for further inquiry. Paternal grandfather suggested only that the Department inquire also with paternal grandmother. The Department inquired with paternal grandmother.

The Department also inquired with maternal grandmother. After the Department informed mother it had done so, mother was unable to suggest anyone else for the Department to speak with on the topic. Nevertheless, the Department asked mother for contact information for mother's father, but mother explained she did not have this information. In lieu of maternal grandfather's information, the Department requested and obtained contact information for mother's uncle—maternal grandfather's brother—and inquired with him about Indian ancestry. He denied it, denied knowing anyone who could provide more information, and further explained that, because his father (maternal great-grandfather) was adopted, the likelihood of getting reliable information on the topic was limited.

In short, the Department inquired about Indian ancestry with representatives from both sides of two generational levels of H.B.'s family. It contacted every person its interviewees identified as a likely source of information about ancestry. The juvenile court had an adequate basis on which to conclude the Department fulfilled its inquiry obligations under section 224.2, subdivision (b), and that neither the Department nor the court had reason to know or believe that H.B. is an Indian child. Under our deferential standard of review, the juvenile court did not need the Department to contact every unnamed extended family member that had attended a court hearing, regardless of

12

difficulty in doing so, to reach its conclusion.

**DISPOSITION**

The juvenile court's order terminating parental rights over H.B. is affirmed.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.

VIRAMONTES, J.